In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-1444

DANIEL J. VOELKER,

*Plaintiff-Appellant*,

v.

PORSCHE CARS NORTH AMERICA, INC.,
A DELAWARE CORPORATION; PORSCHE
FINANCIAL SERVICES, INC., A DELAWARE
CORPORATION; PORSCHE LEASING, LTD.,
A DELAWARE CORPORATION; ET AL.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 4798—**Harry D. Leinenweber**, *Judge.*

ARGUED SEPTEMBER 10, 2003—DECIDED DECEMBER 12, 2003
ON RESUBMISSION[*]

Before MANION, EVANS, and WILLIAMS, *Circuit Judges.*

MANION, *Circuit Judge.* Daniel J. Voelker appeals from
the district court's dismissal of his claims for breach of

---

[*] The opinion in this case was originally published on November 3, 2003. Thereafter, on November 14, 2003, the defendants-appellees filed a petition for rehearing. The panel grants the petition, and this revised opinion is substituted for the opinion published November 3, 2003.

written warranty and breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act, ("Magnuson-Moss Act" or "the Act") 15 U.S.C. § 2301.8 *et seq.*, and for various violations of state law. We reverse as to Voelker's claim for breach of written warranty under the Magnuson-Moss Act and affirm as to all other claims.

## I.

Because this case comes to us after the district court granted a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we assume that the facts alleged in the complaint are true. This dispute revolves around the lease of an automobile, a 2001 Porsche 911, which Dr. Ing. h.c. F. Porsche AG ("Porsche") manufactured in Germany. Through its subsidiary, Porsche Cars North America, Inc. (for our purposes, we shall refer to both entities as "Porsche"), Porsche exported the auto to the United States and sold it to Copans Motors, Inc., a Porsche dealership located in Pompano Beach, Florida, which then took title to the vehicle. In June 2001, Voelker leased the car from Copans. As part of the lease agreement, Porsche and Copans provided Voelker with a "New Car Limited Warranty" which, with enumerated exceptions, required Porsche to "repair or replace . . . any factory-installed part that [wa]s defective in material or workmanship under normal use." By its own terms, this warranty was to begin "on the date the car [was] first delivered to the first retail purchaser, or the date it [wa]s first used as a demonstrator, lease, or company car, whichever c[ame] first."

Unfortunately for Voelker, less than three months after the lease began, on September 20, 2001, Walter Dreikosen ran a stop sign and his sport-utility vehicle collided with the Porsche on the driver's side, causing more than $25,000

in damages and physical injuries to Voelker. Although the car had a driver's side airbag system, it did not deploy. After the accident, the car was taken to Europa Imports for repairs. Under the lease, only Porsche parts could be used to fix the car. The parts Voelker needed were in short supply, however, and his car sat in the shop for several months. At some point, stuck with a car he could neither drive nor repair, Voelker stopped making payments to Porsche Financial Services, Inc. ("PFS"), the finance company to whom Copans had assigned the lease.

Voelker then complained to Porsche. The "Customer Commitment Department" of Porsche responded by promising Voelker that, until the repair parts were delivered to Europa Motors, it would make lease payments directly to PFS. In February 2002, however, James Ray, director of credit operations for PFS, told Voelker that he would not accept payments from Porsche because to do so would violate "banking laws." Although PFS did eventually accept two lease payments from Porsche, Ray stopped it from accepting any further payments.

In March 2002, the car was still not fixed and PFS refused to pay for the repairs. PFS claimed that, because the parts were destroyed in an accident, and not defective, they were not covered by the warranty. It then demanded that Voelker surrender the vehicle to be sold at auction, because of the overdue lease payments.

Voelker responded by filing suit in the Circuit Court of Cook County, Illinois, alleging violations of three federal statutes, the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and the Magnuson-Moss Act, as well as numerous claims under state law. The defendants then timely removed the case to the Northern District of Illinois, asserting in the notice of removal that the dis-

trict court had original jurisdiction over the three federal claims and supplemental jurisdiction over the claims grounded in state law. Voelker did not move to remand back to state court. Eventually, on a Rule 12(b)(6) motion, the district court dismissed all of Voelker's federal claims and all but a few of Voelker's state claims. The district court then remanded the remaining state claims. Voelker appeals the dismissal of his claims under the Magnuson-Moss Act, Illinois Uniform Commercial Code ("UCC") (810 ILCS 5/1-101, *et seq.*), the New Vehicle Buyer Protection Act (815 ILCS 380/1, *et seq.*), a theory of fraudulent inducement, the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2, *et seq.*), a theory of tortious interference with contract, and a theory of breach of contract.

## II.

This court reviews de novo the district court's grant of the defendants' motion to dismiss under Rule 12(b)(6). *International Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### A.  Claims Under the Magnuson-Moss Act

Voelker claims breach of written warranty and breach of the implied warranty of merchantability against Porsche and Copans under the Magnuson-Moss Act. Although the parties have not briefed the issue, it is not clear at the outset that these claims were removed properly and, accordingly, it is unclear that this court has subject matter juris-

diction over them. Federal courts are obliged to inquire *sua sponte* wherever the propriety of the removal of a claim to federal court is in question. *Tylka v. Gerber Products, Co.,* 211 F.3d 445, 447 (7th Cir. 2000). Our review of this issue is plenary. *Id.*

Removal is proper over any action that could have been filed originally in federal court. *Id.* at 448. There are two conceivable ways in which Voelker's Magnuson-Moss claims could originally have been brought in federal court: under federal question jurisdiction or under supplemental jurisdiction. Under 15 U.S.C. § 2301(d)(1)(B), federal question jurisdiction exists over a Magnuson-Moss claim where the amount in controversy is at least $50,000. *Gardynski-Leschuck v. Ford Motor Co.,* 142 F.3d 955, 959 (7th Cir. 1998). In their notice of removal to federal court, § 2301(d)(1) was the only basis that the defendants put forth to justify federal jurisdiction over the Magnuson-Moss claims. To calculate the amount in controversy under § 2301(d)(1)(B), however, the party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle. *Id.* at 957. Unfortunately, no party has provided us with the relevant numbers to plug into the *Gardynski-Leschuck* formula, and we are thus in no position to conclude that jurisdiction under § 2301(d)(1)(B) existed over the Magnuson-Moss claims. That leaves the question of whether federal jurisdiction over the Magnuson-Moss claims could exist under the statute governing supplemental jurisdiction, 28 U.S.C. § 1367.

Supplemental jurisdiction over the Magnuson-Moss claims could have existed in the district court. That court had federal question jurisdiction over the TILA and

FCRA claims and, because both of those claims and the Magnuson-Moss claims arise from the same controversy, it also had the discretionary authority to exercise supplemental jurisdiction over the Magnuson-Moss claims. *See* 28 U.S.C. § 1367(a) (2000); *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 588 n.12 (3d Cir. 1997) (holding that district courts may exercise supplemental jurisdiction over Magnuson-Moss claims); *Wetzel v. American Motors Corp.*, 693 F. Supp. 246, 249-51 (E.D. Pa. 1988) (same). Once we determine that the district court had the power to entertain, under its supplemental jurisdiction, a claim that it actually reached on the merits, the existence of federal jurisdiction over that claim is established and our review is limited to whether the district court's discretion was abused. *Peter Bay Homeowners Ass'n v. Stillman*, 294 F.3d 524, 534 (3d Cir. 2002); *see also Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1491-92 (7th Cir. 1996) (holding that federal jurisdiction existed for a claim over which the district court could have, but did not explicitly, invoke supplemental jurisdiction). Given that neither party objects to the district court's de facto exercise of its supplemental jurisdiction, and no exceptional circumstances exist, any possible issue of whether the district court abused its discretion by exercising supplemental jurisdiction over the Magnuson-Moss claims is waived. *New Jersey Turnpike Auth. v. PPG Indus.*, 197 F.3d 96, 113 (3d Cir. 1999).

Having concluded that we have jurisdiction to reach the issue, we turn to whether the district court properly dismissed Voelker's claims for breach of both written and implied warranties under the Magnuson-Moss Act. The statute allows a "consumer" to bring a suit where he claims to be "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this [Act] or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d).

To proceed with his claim, therefore, Voelker must be a consumer within the ambit of the statute. The district court dismissed Voelker's claims under the Magnuson-Moss Act on the ground that lessees are not consumers under the statute. Thus the first question on appeal is whether Voelker is a consumer for purposes of his claim for breach of written warranty.

The Magnuson-Moss Act defines three categories of "consumer[s]"[1]: a category one consumer is "a buyer (other than for the purposes of resale) of any consumer product"; a category two consumer is "any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product"; and, a category three consumer is "any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3). Voelker claims to be a consumer under all three categories.

The first category of consumer would require Voelker to be a "buyer," which presupposes a sale. The "sale" that Voelker identifies in his brief is the lease, which he argues is functionally equivalent to a sale. No binding authority governs the question of whether a lease can constitute a sale under the Magnuson-Moss Act. Persuasive authorities, for their part, are divided. *See Szubski v. Mercedes-Benz, U.S.A., LLC*, ___ N.E.2d ___, 2003 WL 22052779, at \*\*6-7 (Oh. Ct. Cm. Pleas Apr. 8, 2003) (collecting cases on both sides of the issue).

---

[1] For ease of reference, we refer to the three types of consumers as category one, two or three consumers, although the statute itself does not use this terminology.

As the Court of Appeals of New York has pointed out, the Act does not define "sale." *DiCintio v. DaimlerChrysler Corp.*, 768 N.E.2d 1121, 1124 (N.Y. 2002). Under the Uniform Commercial Code, however, it is well established that a sale occurs only where there is a passing of title to a buyer. *Id.* (citing UCC §§ 2-106[1] and 2-103[1][a]). In common speech, similarly, a sale is typically understood to require the transfer of title. *See* Webster's Ninth New Collegiate Dictionary 1037 (1987) (defining "sale," in relevant part, as "the transfer of ownership of and title to property from one person to another for a price"). Against this backdrop, we conclude that no reasonable person reading the Magnuson-Moss Act would conclude that there is a sale to Voelker under the Act where title does not pass to him. *See, e.g., DiCintio*, 768 N.E.2d at 1124; *Sellers v. Frank Griffin AMC Jeep, Inc.*, 526 So.2d 147, 155-56 (Fl. Ct. App. 1988). Here, it is undisputed that title never passed to Voelker under the lease agreement, and so the lease cannot constitute a sale for purposes of making Voelker a category one consumer.

When Voelker signed his lease, however, title had already passed from the car's manufacturer, Porsche, to the lessor, Copans. Relying on *Cohen v. AM General Corp.*, 264 F. Supp. 2d 616, 619-20 (N.D. Ill. 2003), Voelker argues that the sale needed to qualify him as a category one consumer occurred when the manufacturer sold the vehicle to Copans, who in turn became Voelker's lessor. We disagree because, for a sale to qualify a plaintiff as a category one consumer, it must be made to a buyer "*other than for purposes of resale.*" 15 U.S.C. § 2301(3) (emphasis added). In other words, it is a final sale to a user, not a sale to an intended reseller. But whenever a lessor takes title to a car, at least one of its purposes is, presumably, the actual resale of the vehicle. *DiCintio*, 768 N.E.2d at 1127. In this particular case, Voelker's lease, a copy of which is attached

to the complaint, establishes that Copans took title of the vehicle with intent ultimately to resell it: Paragraph 17 gives Voelker first option to buy the car at the end of the lease term or even before the end of the lease term, and Paragraph 21B requires Voelker, in the event of a default, to reimburse the lessor for reasonable expenses incurred as a result of selling the car, presumably after repossessing it. *See Diamond v. Porsche Cars N.A., Inc.*, 02 C 414, 2002 WL 31155064, at \*5 (N.D. Ill. Sept. 26, 2002) (construing a very similar lease), *vacated on other grounds* 70 Fed. App. 893 (7th Cir. 2003).

In short, for Voelker to qualify as a category one consumer under the Magnuson-Moss Act, there must have been a sale of the automobile "other than for the purposes of resale," and that sale must have included the transfer of title. Here, the only sale alleged in relation to the car was between the manufacturer, Porsche, and the lessor, Copans, and that sale occurred for the purposes of resale. Accordingly, accepting all facts alleged in the complaint as true, the transfer of the possession of the car to Voelker was not a sale and thus he is not entitled to proceed under the Magnuson-Moss Act as a category one consumer.

The next question is whether Voelker has stated a claim as a category two consumer. In other words, has Voelker alleged facts that would show that he is "any person to whom such product is *transferred during the duration* of an implied or written warranty (or service contract) applicable to the product"? 15 U.S.C. § 2301(3) (emphasis added). The "written warranty . . . applicable to the product" that Voelker identifies is the New Car Limited Warranty, which Voelker has attached to his complaint. That warranty, however, did not begin until *after* possession of the car was transferred to Voelker, and not "during [the warranty's] duration." By its own terms, the warranty did

not take effect until one of four antecedents occurred: "the date the car [was] first delivered to the first retail pur-chaser, or the date it [wa]s first used as a demonstrator, lease, or company car, whichever c[ame] first." The only triggering event that Voelker identifies is the date that the car was first used—by himself—as a lease car. Because the warranty did not begin until the date the car was "first used as a . . . lease" car, the warranty did not begin until after he took possession. Thus, Voelker has failed to al-lege that the car was "transferred [to him] during the duration" of the New Car Limited Warranty, and, accept-ing all of the allegations in his complaint as true, he does not qualify as a category two consumer.[2]

Finally, we consider whether Voelker has stated a claim as a category three consumer. That is, we ask whether he is "any other person who is entitled by the terms of such warranty (or service contract) *or under applicable State law* to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3) (emphasis added). Copans, as the defen-dants assert, assigned to Voelker "all its rights under the Porsche Limited Warranty." Under the state law of Illi-nois, as an assignee of that warranty, a lessee like Voelker was entitled to enforce the rights arising from the warranty. *Dekelaita v. Nissan Motor Corp.*, ___ N.E.2d ___, 2003 WL 22240509, at *5 (Ill. Ct. App. 2003) (citing *Collins Co. v. Carboline Co.*, 532 N.E.2d 834 (Ill. 1988)). Therefore, Voelker qualifies as a category three consumer. *See id.*

---

[2] We therefore need not decide the question of whether mere transfer of possession, as opposed to transfer of title, satisfies the requirement that a category two plaintiff establish that the product was transferred.

The defendants nonetheless argue that, even if Voelker satisfied the definition of consumer, because the only sale of the car was for purposes of resale, he does not have a written warranty as defined in the statute and therefore may not proceed with his claim for breach of written warranty. The Magnuson-Moss Act defines "written warranty" as follows:

> (6) The term "written warranty" means—
>
> > (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
> >
> > (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
>
> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer *for purposes other than resale* of such product.

15 U.S.C. § 2301(6) (emphasis added). Having concluded above that the sale of the auto from Porsche to Copans was for the purpose of resale, we agree with the defendants that the New Car Limited Warranty does not satisfy the statute's definition of a written warranty because it was not made to a "buyer for purposes other than resale."

For Voelker to state a valid claim, however, the New Car Limited Warranty need not meet the definition of written

warranty contained in § 2301(6). Because Voelker is a category three consumer *entitled under state law* to enforce the New Car Limited Warranty, he is a consumer allowed under the Magnuson-Moss Act to enforce the New Car Limited Warranty. *See* 15 U.S.C. § 2301(3) (including as consumers those entitled to enforce a warranty "under applicable State law"); *Dekelaita*, 2003 WL 22240509, at *7 (holding that "the third prong does not exclusively require that the warranty meet the Act's definition if in fact it is enforceable under state law").

In short, because Voelker, under the assignment from Copans, is a person entitled to enforce the New Car Limited Warranty under the applicable state law, we hold that Voelker may proceed as a category three consumer regarding his claim for breach of written warranty under the Magnuson-Moss Act.

Voelker's claim under the Act for breach of the implied warranty of merchantability fares less well. To the extent that Voelker seeks to recover for personal injuries, he has failed to state a claim: personal injury claims based on a breach of warranty are not cognizable under the Magnuson-Moss Act. *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1066 (5th Cir. 1984). Voelker's bid for monetary damages, however, presents a more complicated set of issues.

The defendants argue that, to the extent Voelker seeks to recover for monetary loss, his claim against Porsche fails for lack of privity under the law of Illinois. This presents an issue of first impression for this court: whether a valid claim for breach of the implied warranty of merchantability under the Magnuson-Moss Act must allege privity in accordance with the applicable state law. For the reasons set forth below, we conclude that it must.

The Magnuson-Moss Act allows a suit for breach of "an implied warranty arising under State law (as modified by

sections 2308 and 2304(a) of this title)." 15 U.S.C. § 2301(7). Because §§ 2308 and 2304(a) do not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson-Moss Act therefore hinges entirely on the applicable state law. *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1014 (D.C. Cir. 1986); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 249 (2d Cir. 1986). Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty. *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988). Therefore, because it is undisputed that Voelker lacks privity of contract with Porsche, this claim against Porsche was properly dismissed. *Kowalke v. Bernard Chevrolet, Inc.*, No. 99 C 7980, 2000 WL 656660, at *5 (N.D. Ill. Mar. 23, 2000); *Larry J. Soldinger Assocs., Ltd. v. Aston Martin Lagonda of N.A., Inc.*, No. 97 C 7792, 1999 WL 756174, at **6-10 (N.D. Ill. Sept. 13, 1999).

Voelker does allege privity of contract with Copans. As the defendants point out, however, Copans' lease with Voelker contained the following disclaimer in bold type and on the face of the lease: "[l]essor Copans makes no warranties or representations, either express or implied as to the Vehicle or any part of accessory thereof. Lessor makes no warranty of merchantability or fitness of the Vehicle for any particular purpose, or any other representation or warranty whatsoever . . . ." Because this disclaimer was in writing and conspicuous, and because it expressly mentioned merchantability, it shields Copans from suit for breach of the implied warranty of merchantability under Illinois law. 810 ILCS5/2A-214; *cf. Basselen v. General Motors Corp.*, 792 N.E.2d 498, 508 (Ill. Ct. App. 2003) (discussing why an "as is" warranty was sufficiently clear and con-

spicuous to shield, under 810 ILCS 5/1-201(10), the seller from liability).

However, Voelker has alleged that Copans, as we discuss *infra*, issued him an express warranty, in writing, as to the condition of the airbags. If Voelker had pleaded correctly a claim for breach of express warranty against Copans, Copans' disclaimer would not have been effective to shield it from suit for breach of implied warranty of merchantability under the Magnuson-Moss Act. The Act states that "[n]o supplier may disclaim . . . any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product . . . ." 15 U.S.C. § 2308(a).[3] As we discuss in the next section, however, Voelker has not stated a claim for breach of express warranty under Illinois law.

Voelker may not recover for personal injury caused by a breach of warranty under the Magnuson-Moss Act. As to economic losses, Voelker's claim for breach of the implied warranty of merchantability fails because he has not alleged privity with Porsche and because Copans' disclaimer precludes liability under Illinois law. We therefore affirm the dismissal of Voelker's claim for breach of the implied warranty of merchantability under the Magnuson-Moss Act.

**B.  Claims for Breach of Express Warranty Under the Illinois UCC and Lemon Law**

Voelker asserts a claim for breach of express warranty against Porsche and Copans under the Illinois UCC and

---

[3] The New Car Limited Warranty was made by Porsche, not Copans.

the New Vehicle Buyer Protection Act, or "lemon law," of Illinois, 815 ILCS 380/1, *et seq.* Voelker's theory is that these defendants violated both statutes (1) by affirming that the side airbag system would work even though, when Voelker had his accident, the system failed to deploy, and (2) by failing to repair the car after the accident. As to the latter theory, the promise to repair is not an express warranty under the Illinois UCC, *Cosman v. Ford Motor Co.*, 674 N.E.2d 61, 67 (Ill. Ct. App. 1996) (reasoning that "the breach of the promise to repair which plaintiffs allege . . . is not a 'warranty' as defined by the Code"), and therefore is not an express warranty under the lemon law either, 815 ILCS 380/2(b).

Regarding the airbag's failure to deploy, Voelker alleges a design defect. As Voelker argued in his opening brief:

> The subject vehicle's side airbags are defective and non-conforming in that they do not address "actual" or "real-world" crash conditions as they do not deploy when the subject vehicle is impacted in the driver's door—even at a rate of speed in excess of 25 miles per hour—by a sports-utility vehicle ("SUV"), sports-activity vehicle ("SAV"), large passenger vehicle and certain other passenger cars. This defect or condition is unique to the subject vehicle and other 1998, 1999, 2000, 2001 and 2002 model year 911 Porsche models. (S.A.16 at ¶ 43). The subject vehicle has too few crash sensors or trigger points to work properly and as represented to work by Defendants and those crash sensors or trigger points are too low to the ground to deploy the side airbags. The crash sensors are also believed to be of poor quality. (S.A.16 at ¶ 44).

Voelker points to no part of the record showing that a warranty against defective design was part of his contract with any defendant. Therefore, we conclude that he has

failed to state a claim for breach of express warranty. *See Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 635 (Ill. Ct. App. 2001) (reasoning that, although the plaintiff had shown the existence of a design defect, judgment for the defendant was appropriate because the express warranty did not, by its contractual terms, cover design defects). We thus hold that Voelker has failed to state a claim for breach of express warranty insofar as he relies on the allegedly defective design of the airbag system. We affirm the dismissal of Voelker's claims for breach of express warranty under the Illinois UCC and Illinois' lemon law.

**C.   Other State Law Claims**

In his opening brief, Voelker recites facts that, he believes, show that the defendants fraudulently induced him to lease the car. But he fails to cite any legal authority showing that, contrary to the district court's ruling, he has stated a claim upon which relief could be granted. By failing to provide supporting authority for his position, Voelker has not complied with Fed. R. App. P. 28(a)(9), and therefore has forfeited appellate review of this claim. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

Voelker makes the same mistake regarding his claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, against Porsche, Copans, and G.M. Lumsden, an employee of Porsche, for allegedly giving Voelker (who is himself a lawyer) legal advice not to file this suit. In his brief, Voelker boldly asserts that his "complaint states a claim against Lumsden, [Copans] and Porsche for violation of the Consumer Fraud Act." But he does not explain why, on the facts pleaded, he could satisfy the elements of a claim under that stat-

ute. Voelker has therefore failed to develop this argument on appeal, and has waived appellate review of the dismissal of his claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. Fed. R. App. P. 28(a)(9)(A) (stating that an appellant's argument must provide both his "contentions and the reasons for them").

We turn next to Voelker's claim for tortious interference with contract against PFS and one of its agents, James Ray. The elements of tortious interference with contract are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages." *HIP Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 676 (Ill. 1989). The district court dismissed this claim on the ground that Voelker had failed to allege facts that, if true, would allow a jury to find the first element of this tort.

Voelker argues that the "contract" with which he alleges PFS and Ray interfered was between Voelker and Porsche, and required Porsche to assume Voelker's lease payments until it provided Voelker with the repair parts necessary to make the car operational. Voelker, however, does not point to any allegations in the complaint that would satisfy the elements of a contract. "A contract, to be valid, must contain offer, acceptance, and consideration." *Halloran v. Dickerson*, 679 N.E.2d 774, 782 (Ill. Ct. App. 1997). In his brief, Voelker identifies the offer as Porsche's proposal to pay Voelker's lease payments and he identifies his acceptance of that offer. The problem is that he does not point to alleged facts that, if true, would allow a jury to find that Voelker incurred a reciprocal obligation; i.e.,

Voelker has neglected the element of consideration. *In re Peterson's Estate*, 3 N.E.2d 725, 726 (Ill. Ct. App. 1936) (reasoning that "[w]ithout reciprocal obligation, no contract can be constituted"). We therefore affirm the district court on the ground that Voelker has failed to allege the existence of a valid and enforceable contract between himself and another.

We turn finally to the last issue on appeal, whether the district court properly dismissed Voelker's claim for breach of contract against Copans and PFS. In the section of his brief addressing this issue, Voelker fails to set forth any legal authority. He has therefore waived appellate review of this claim's dismissal. Fed. R. App. P. 28(a)(9)(A).

## III.

Because Voelker has alleged facts showing him to be a category three consumer entitled to enforce a written warranty under the Magnuson-Moss Act, we reverse the district court's dismissal of his claim for breach of written warranty under that statute. We affirm in all other respects.

A true Copy:

> Teste:

> _____
> *Clerk of the United States Court of*
> *Appeals for the Seventh Circuit*