*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TERRANCE GOLDEN,

>*Plaintiff-Appellant,*

*v.*

No. 03-1991

GORNO BROS., INC., d/b/a Gorno Ford,

>*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-71900—Paul D. Borman, District Judge.

Argued: November 4, 2004

Decided and Filed: June 14, 2005

Before: MOORE and GIBBONS, Circuit Judges; MILLS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Ian B. Lyngklip, LYNGKLIP & TAUB, Southfield, Michigan, for Appellant. Daniel G. Kielczewski, ABBOTT, NICHOLSON, QUILTER, ESSHAKI & YOUNGBLOOD, Detroit, Michigan, for Appellee. **ON BRIEF:** Ian B. Lyngklip, LYNGKLIP & TAUB, Southfield, Michigan, for Appellant. Daniel G. Kielczewski, ABBOTT, NICHOLSON, QUILTER, ESSHAKI & YOUNGBLOOD, Detroit, Michigan, for Appellee.

MILLS, D. J., delivered the opinion of the court, in which GIBBONS, J., joined. MOORE, J. (pp. 7-9), delivered a separate dissenting opinion.

---

## OPINION

---

RICHARD MILLS, District Judge. This case presents a question of first impression in this Circuit.

Terrance Golden appeals from the district court's dismissal of his claim pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and several state law claims arising from his purchase of a defective automobile from Gorno Bros., Inc. ("Gorno Ford"). The district court

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

dismissed the Magnuson-Moss Warranty Act claim for lack of subject matter jurisdiction on the basis that it did not satisfy the amount in controversy requirement, and declined to exercise supplemental jurisdiction over the state law causes of action.

We **AFFIRM**.

## I. FACTS AND PROCEDURAL BACKGROUND

The sole basis of federal subject matter jurisdiction in this case was Terrance Golden's single claim pursuant to the Magnuson-Moss Warranty Act. In May 2001, Gorno Ford sold a new, customized Ford Mustang to Golden via a retail installment contract totaling $61,708.80, which included more than $14,000 in finance charges. The pre-tax purchase price of the vehicle was $42,903.41. Almost immediately, Golden had to return his Mustang for various repairs. In the five months immediately following the purchase, the vehicle was at Gorno Ford's repair facility for a total of 44 days.

The Ford Mustang began to exhibit obvious mechanical and design problems within one week of its purchase by Golden on May 21, 2001. On May 29, the Mustang was returned to Gorno Ford's repair facility for warranty repairs. The first set of repairs was completed on June 1. Six days later, Golden returned the vehicle to the repair facility for the same problems and other defects. This set of repairs was not completed until July 12, 2001. Gorno Ford had kept the vehicle for 36 days in order to service these defects under warranty.

The persistent problem was that the Mustang's serpentine belt and throttle cable rubbed against the insulation under the hood, causing a burning smell and a risk of fire. Even after the second set of repairs, these problems continued. On the same date that the Mustang was purportedly repaired a second time, July 12, 2001, Golden again returned the vehicle to Gorno Ford's repair facility to be repaired under warranty. On July 13, Gorno Ford replaced the serpentine belt.

According to Golden, the problems with the Mustang did not end. On October 1, 2001, Golden returned the vehicle to Gorno Ford for warranty repairs because it was leaking fuel. The following day, Gorno Ford repaired the Mustang's fuel injector. However, the vehicle continued to experience mechanical problems. On October 22, 2001, Golden's attorney wrote a "Last Chance" letter to former parties Ford Motor Company and Saleen Incorporated and to Gorno Ford.[1]

On March 25, 2002, Golden returned the vehicle to Gorno Ford's repair facility for a fifth time, still hoping that the constant problems would be repaired under warranty. On this occasion, Gorno Ford replaced the entire front hood on the vehicle. This repair was completed on April 10, 2002; Gorno Ford therefore retained possession of the Mustang for more than two weeks. Golden attempted to drive the vehicle, but problems persisted with the cable, the belt, and the interior of the hood. Because of the burning odor and the constant problems with the Mustang, Golden was worried about the possibility of a fire. He determined that he could no longer risk driving a vehicle with such major defects.

Golden filed suit in the Eastern District of Michigan, asserting several claims against Gorno Ford. In addition to his Magnuson-Moss Warranty Act claim, Golden asserted several state law claims.[2] Gorno Ford filed a motion to dismiss for lack of subject matter jurisdiction under Federal

---

[1]Golden settled his claims with Ford Motor Company and Saleen Incorporated.

[2]The state law claims asserted against Gorno Ford included counts alleging violations of the Michigan Consumer Protection Act, the Michigan Lemon Law and the Michigan Motor Vehicle Finance Act; and claims for breach of contract, breach of warranties, repudiation and revocation of acceptance.

Rule of Civil Procedure 12(b)(1). The basis for the motion was that Golden's Magnuson-Moss Warranty Act claim failed to meet the $50,000 amount in controversy required under the statute's jurisdictional limitations, 15 U.S.C. § 2310(d)(3)(B).

The issue before the district court was whether the entire amount of the contract, including the finance charges, should be included in determining the amount in controversy. The district court entered an order dismissing Golden's action for failure to meet the $50,000 amount in controversy requirement of the Magnuson-Moss Warranty Act. This appeal followed.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction. When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). If the district court's jurisdictional ruling is based on the resolution of factual disputes, we review those findings under a clearly erroneous standard. However, our review of the district court's application of the law to the facts is de novo. *See RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

## III. ANALYSIS

The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The Act provides for federal district court jurisdiction of certain claims. *See* 15 U.S.C. § 2310(d)(1)(B). However, the jurisdiction of such claims is subject to an amount in controversy requirement. The applicable portion of the Act provides, "No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B).

The district court determined that Golden's measure of damages under Michigan warranty law would be considerably less than the purchase price of the Mustang. It concluded, therefore, that he was unable to satisfy the $50,000 amount in controversy requirement of section 2310(d)(3)(B). On appeal, Golden contends that the district court erred in failing to consider revocation of acceptance as an available remedy under the Magnuson-Moss Warranty Act and under Michigan law. He asserts that because revocation of acceptance is an available remedy under Michigan law for breach of warranty, it is therefore an available remedy under the Magnuson-Moss Warranty Act. Pursuant to this remedy, a plaintiff may cancel the entire contract. Accordingly, Golden alleges that the amount in controversy is the entire amount of the contract, including the finance charges. Therefore, he contends that the $50,000 amount in controversy requirement is easily satisfied.

Under certain conditions, Michigan law allows a consumer to revoke the acceptance of a good "whose nonconformity substantially impairs its value to him if he has accepted it." *See* M.C.L. § 440.2608(1). The revocation of acceptance can be based on "the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured." *See* M.C.L. § 440.2608(1)(a). A buyer who revokes his acceptance of goods has the same rights and duties with respect to the goods as if he had rejected them. *See* M.C.L. § 440.2608(3). A buyer who justifiably revokes acceptance may recover as much of the price as has been paid. *See* M.C.L. § 440.2711(1).

How to calculate the amount in controversy in this situation is an issue of first impression in this Court. Recently, the Seventh Circuit addressed how the amount in controversy requirement of the Magnuson-Moss Warranty Act should be determined. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004). In addition to his claim under the Magnuson-Moss Warranty Act, the plaintiff in *Schimmer* asserted several claims pursuant to Illinois law, including a claim for revocation of acceptance. The plaintiff had purchased a new 2000 Jaguar XK8, for which he paid $69,513.00 in cash. After encountering several problems which were not repaired to his satisfaction, the plaintiff attempted to revoke acceptance of the Jaguar. Following the defendant's refusal to accept his revocation of acceptance, the plaintiff filed suit in state court. The action was subsequently removed to federal court. *Id.* at 403. On appeal, the Seventh Circuit first considered whether removal to federal court was proper. Although the plaintiff's complaint in *Schimmer* prayed for a full refund of the $69,513.00 purchase price, the Seventh Circuit determined that the amount in controversy could not exceed $50,000. It concluded, therefore, that removal to federal court was improper. *Id.* at 404-05.

The Illinois statutes pertaining to revocation of acceptance contain the same language as do the Michigan statutes in the case *sub judice*. *See*, *e.g.*, 810 Ill. Comp. Stat. 5/2-608, 5/2-711(1); *see also* 440 M.C.L. § 440.2608 and 440 M.C.L. § 2711(1). In *Schimmer*, the Seventh Circuit concluded that even if Illinois law allowed a full refund of the $69,513.00 purchase price, the amount in controversy would still be less than $50,000. That court explained:

> If the district court were to determine that Schimmer could revoke his acceptance of the car and receive a refund of the purchase price, then Jaguar would also be entitled to re-take possession of the car (now worth only $54,013.00, as explained below). In addition, Jaguar would also be entitled to a credit for the value Schimmer received from his use of the car while it was in his possession. Hence, Schimmer's true money damages–and concomitantly, the true amount in controversy–would equal only the difference between the price of the new car and the worth of the allegedly defective car, reduced by his beneficial use of the defective car. Jaguar could not lose $69,513, any more than Schimmer could gain that amount. We so held in a similar Magnuson-Moss case and calculated damages using the following formula: the price of a replacement vehicle, minus both the present value of the allegedly defective car and the value that the plaintiff received from the use of the allegedly defective car.

384 F.3d at 405-06 (citing *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998); *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516, 521 (7th Cir. 2003)). The Seventh Circuit proceeded to specify how the amount in controversy would be calculated in that case:

> We know from Schimmer's complaint that the purchase price of a replacement XK8 is $69,513.00 because that is what he paid for the allegedly defective vehicle. Prior to filing the present suit, Schimmer hired an expert to inspect the XK8 and opine as to its diminished value based on its alleged defects. According to the expert's inspection of the XK8, the car was worth $54,013.00 when Jaguar removed the case. Applying the numbers to the *Gardynski-Leschuck* formula, the cost of a replacement vehicle ($69,513.00) minus the present value of the defective car ($54,013.00) yields $15,500.00. To complete the formula, this $15,500.00 figure must be further reduced by the value that Schimmer obtained from his use of the XK8. Although we have no way of knowing what this figure might be, even if it is $0.00, the maximum Schimmer could recover (and the maximum loss to Jaguar) under Illinois law would be $15,500.00. As this figure is well below the $50,000 amount in controversy requirement necessary to establish subject-matter jurisdiction under the Magnuson-

Moss Act, we find that this case was improperly removed from state court and must be dismissed for lack of subject-matter jurisdiction.

*Id.* at 406 (footnote omitted).

A review of the facts of this case and those of *Schimmer* shows that there is actually a stronger argument in favor of federal jurisdiction in *Schimmer*, on the basis that the cost of the vehicle in that case exceeded $50,000. Conversely, the pre-tax purchase price of the Mustang in this case was significantly below the amount required for federal jurisdiction. Golden's argument that the amount in controversy is satisfied depends on adding the interest over the life of the loan to the purchase price. Accordingly, Golden would not dispute that if he had paid cash for the vehicle (like the buyer in *Schimmer*), the amount in controversy would be less than $50,000 and federal subject matter jurisdiction would be lacking. As Gorno Ford notes, it was never entitled to anything more than the $42,903.41 that it received. Certainly, the question of whether federal jurisdiction exists under the Magnuson-Moss Warranty Act should not be determined by whether a finance contract was used in purchasing an automobile. This is particularly true since the Act provides that the amount in controversy does not include interest.

In discussing the amount in controversy requirement of the Magnuson-Moss Warranty Act, the Third Circuit has used the same reasoning as that employed by the Seventh Circuit. *See Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 402 (3d Cir. 2004). Quoting *Voelker*, 353 F.3d at 521, that court noted the rule that "the party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle." *Id.* The Third Circuit further stated, "The facts in that Magnuson-Moss case differ from those presented here, but the requirements of allowance for usage and establishing the difference in value, rather than simply the purchase price are the same." *Id.*

According to Golden, the Sixth Circuit case which is most directly on point to this case is *Rosen v. Chrysler Corp.*, 205 F.3d 918 (6th Cir. 2000). In *Rosen*, the plaintiff sought rescission of a purchase contract under several theories pursuant to New Jersey law; it did not involve the Magnuson-Moss Warranty Act. The asserted basis for jurisdiction was diversity of citizenship. *See id.* at 920. This Court noted the general rule in diversity cases "that the amount claimed by a plaintiff in his complaint determines that amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount." *Id.* at 920-21. The Court stated, "Contrary to the reasoning articulated by the District Court, however, in cases where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is the amount in controversy." *Id.* at 921. It determined, therefore, that the district court erred in offsetting the plaintiff's rescission claim by the resale value of the vehicle. The amount in controversy was the full contract price of almost $30,000. *See id.* at 922. Because revocation of acceptance is similar to rescission, Golden contends that the same analysis should apply to this case and that we should find, therefore, that the amount in controversy is the total contract price of almost $62,000.

We are not persuaded by Golden's argument. Golden contends that there is no reason why a case involving rescission should be analyzed differently than one involving revocation of acceptance. However, this Court in *Rosen* relies in part on *Jadair, Inc. v. Walt Keeler Co.*, 679 F.2d 131, 133 n.5 (7th Cir. 1982) for the proposition that the contract's entire value, without offset, is the amount in controversy in a diversity case when a plaintiff seeks rescission. *See Rosen*, 205 F.3d at 921. Based on the damages formula in *Schimmer*, 384 F.3d at 405-06, and *Gardynski-Leschuck*, 142 F.3d at 957, and given that *Jadair, Inc.* has not been overruled, it is clear that the Seventh Circuit does not determine the amount in controversy in rescission cases in the same manner as it does in cases involving revocation of acceptance. We agree with the analysis of the Seventh Circuit. Even

if Golden is entitled to a refund of the full contract price upon revocation of acceptance, therefore, it does not follow that the amount in controversy requirement has been satisfied.

Golden also relies on *Roberts v. Chandaleur Homes, Inc.*, 237 F. Supp.2d 696 (S.D. Miss. 2002), in support of his argument that this Court should find that the amount in controversy is the full value of the contract, including the finance charges to be paid over the life of the loan.  In *Roberts*, the plaintiffs purchased a defective mobile home and sought rescission of the purchase agreement. Pursuant to the agreement, the amount financed to purchase the mobile home was $30,496.00; the total payments, including interest, required under the agreement were in excess of $120,000. *See id.* at 697.   The district court concluded that the amount in controversy was satisfied under the Magnuson-Moss Warranty Act.  It also determined that the $75,000 diversity of citizenship amount in controversy requirement had been met.  *Id.* at 699.  In determining that the amounts in controversy had been satisfied, that court reasoned that the pecuniary consequences on the litigants was in excess of $120,000.  *Id.* at 698-99.  We decline to follow the reasoning of the district court in *Roberts*.

We conclude that this Court should follow the reasoning of the Third and Seventh Circuits when determining the amount in controversy under the Magnuson-Moss Warranty Act.  The finance charges of a contract should not be added when determining if the amount in controversy has been satisfied.   Pursuant to that analysis, the amount in controversy here would be calculated by determining the difference between the cost of a replacement vehicle ($42,903.41.) and the present value of the Mustang ($25,000).[3]  The resulting figure of $17,903.41 would be further reduced by the value that Golden obtained from the Mustang.  Even if this amount were $0.00, the most that he could recover and that Gorno Ford could lose would be $17,903.41.  Accordingly, the amount in controversy is that amount or a lower figure.

## IV. CONCLUSION

Even assuming that Golden continues to make payments on the $61,708.80 contract, the amount in controversy would be further reduced by $25,000 because Gorno Ford would be entitled to the Mustang upon the cancellation of the contract.  The district court determined that the vehicle was worth that amount, and that finding has not been contested.  Thus, the amount in controversy would not exceed $50,000 even if the finance charges are included in the calculation.  Because the amount in controversy between the parties is less than $50,000, this Court lacks jurisdiction under the Magnuson-Moss Warranty Act.

We **AFFIRM**.

---

[3]This was the value of the Mustang when the district court granted Gorno Ford's motion to dismiss.

———————————

**DISSENT**

———————————

KAREN NELSON MOORE, Circuit Judge, dissenting. Because I believe Terrance Golden's ("Golden") complaint sufficiently alleges an amount in controversy exceeding $50,000, I would reverse the district court's order dismissing Golden's Magnuson-Moss Warranty Act ("MMWA") suit for lack of subject matter jurisdiction.

In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938), the Supreme Court established the now-familiar "legal certainty" test for amount-in-controversy challenges to federal jurisdiction; that is, if a plaintiff filing suit in federal court has alleged in his or her complaint damages in excess of the amount-in-controversy threshold for federal jurisdiction, the defendant must show to a legal certainty that the plaintiff cannot recover such damages in order to defeat federal jurisdiction:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*Id.* (footnotes omitted). Because Golden's complaint specifically claims damages in excess of the MMWA's $50,000 amount-in-controversy requirement, Golden's suit should be dismissed for lack of federal subject matter jurisdiction only if Gorno Bros., Inc. ("Gorno Ford") can establish to a legal certainty that Golden cannot recover such damages.

The majority opinion, adopting the MMWA amount-in-controversy formula set forth in *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004); *Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516 (7th Cir. 2003); and *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998), concludes that the proper measure of the amount in controversy in this case is the cost of a replacement vehicle minus both the salvage value of Golden's defective car and the value Golden obtained from using the defective car. When devising this formula, the Seventh Circuit began with the observation that "[t]he standard remedy under [Illinois] state law for delivery of a defective and useless product is 'cover' — the purchase of a conforming product in the market, with damages equal to the price difference." *Gardynski-Leschuck*, 142 F.3d at 957 (citing Illinois's version of Uniform Commercial Code § 2-712(1), enacted as 810 ILCS 5/2-712(1)). Because the Seventh Circuit's formula bases the amount in controversy only on "cover" damages, I believe it fails to account for the full scope of relief available to Golden under Michigan law and is not an accurate determinant of the amount in controversy in this case.

As the majority correctly notes, determining the amount in controversy in this case requires an examination of what relief Golden could obtain under Michigan law. *See Schimmer*, 384 F.3d at 405. Michigan Compiled Laws § 440.2711 provides that:

(1)  Where . . . the buyer rightfully rejects or justifiably revokes the acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 2612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

    (a)  "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract; or

    (b)  recover damages for nondelivery as provided in this article (section 2713).

* * *

(3)  On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller.

*Id.* (cross references omitted); *see also* MICH. COMP. LAWS § 440.2712 (providing that when a buyer covers, "[t]he buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages . . ., but less expenses saved in consequence of the seller's breach," but noting that "[f]ailure of the buyer to effect cover within this section does not bar him from any other remedy").

Thus, pursuant to § 440.2711, when a buyer revokes his or her acceptance, the result is not only that the buyer is entitled to monetary damages, but also that the "buyer may cancel" his or her contract with the seller. MICH. COMP. LAWS § 440.2711(1). When a buyer cancels a contract under Michigan law, the buyer is released from his or her future obligations under the contract. *See* MICH. COMP. LAWS § 440.2106(4) ("'Cancellation' occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of 'termination' except that the canceling party also retains any remedy for breach of the whole contract or any unperformed balance."); *see also* MICH. COMP. LAWS § 440.2106(3) (noting that "[o]n 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives"). The amount-in-controversy formula adopted by the majority in this case, however, does not account for the fact that, if Golden is entitled to revoke his acceptance of the vehicle, Golden will no longer be obligated to pay the $61,708.80 owed under the Retail Installment Contract.

I also disagree with the majority's position that the financing charges included in the Retail Installment Contract should not be included in determining the amount in controversy in this case. In the majority's view, financing charges should not be included when calculating the amount in controversy in MMWA suits because the MMWA provides that there is no federal jurisdiction "if the amount in controversy is less than the sum or value of $50,000 (*exclusive of interests* and costs)." 15 U.S.C. § 2310(d)(3)(B) (emphasis added). I do not believe, however, that Congress, in excluding "interests and costs" from the amount in controversy, intended to exclude amounts such as vehicle financing charges owed under the contract that forms the basis of the suit. Rather, I believe that the phrase "exclusive of interests and costs" is more appropriately understood to refer to amounts such as pre-judgment interest and filing fees that parties incur during the litigation process. *See Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994) ("It seems clear under *Edwards* [*v. Bates County*, 163 U.S. 269 (1896)] that where, as here, interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes."); *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968) (noting distinction between interest as "a charge for delay in the payment of money" and interest "as the agreed upon price for

the hire of money" and explaining that "Congress' purpose in excluding 'interest' in determining the jurisdictional amount . . . [in diversity cases was] to prevent the delaying of a suit merely to accumulate the necessary amount for federal jurisdiction") (internal quotation marks omitted).

Gorno Ford also contends that the vehicle financing charges should be excluded from the amount in controversy in this case because Ford Motor Credit Company was dismissed subsequent to the filing of Golden's complaint. Because federal jurisdiction is determined at the time a complaint is filed, however, I do not believe that Ford Motor Credit Company's dismissal impacts the amount in controversy. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 289-90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.") (footnote omitted); *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990).

In sum, I respectfully disagree with the majority's conclusion that Gorno Ford has established to a legal certainty that Golden cannot satisfy the MMWA's amount-in-controversy requirement. By failing to take into account the Retail Installment Contract's cancellation when calculating the amount in controversy, the majority underestimates the amount in controversy in this suit, and as a result, impedes the ability of the MMWA to serve its intended purpose: "to make warranties on consumer products more readily understood and enforceable." H.R. REP. NO. 93-1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7702.