*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GLENN HARNDEN,

>    *Plaintiff-Appellant,*

>        *v.*

No. 06-1661

JAYCO, INC., an Indiana Corporation,

>        *Defendant-Appellee,*

FORD MOTOR COMPANY, a Delaware Corporation,
and LLOYD BRIDGES TRAVELAND, INC., a Michigan
Corporation,

>        *Defendants.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72036—Nancy G. Edmunds, District Judge.

Argued: April 17, 2007

Decided and Filed: July 31, 2007

Before: MARTIN and DAUGHTREY, Circuit Judges; SCHWARZER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Karl P. Heil, CONSUMER LEGAL SERVICES P.C., Garden City, Michigan, for Appellant. Michael D. Dolenga, DOLENGA & DOLENGA, PLLC, Farmington, Michigan, for Appellee. **ON BRIEF:** Karl P. Heil, Mark P. Romano, CONSUMER LEGAL SERVICES P.C., Garden City, Michigan, for Appellant. Michael D. Dolenga, Jeffrey R. Nowicki, DOLENGA & DOLENGA, PLLC, Farmington, Michigan, for Appellee.

---

[*]The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.   Plaintiff Glenn Harnden appeals the district court's order granting summary judgment to defendant Jayco as to Harnden's claims based on alleged defects in a Jayco-manufactured Recreational Vehicle.  For the reasons below, we **AFFIRM** the judgment of the district court.

## I.  Factual and Procedural Background

On June 15, 2002, Harnden purchased a new 2001 Jayco Eagle Recreational Vehicle ("RV"). The total purchase price of the RV was $51,451.22.  The chassis of the RV was manufactured by Ford Motor Company and the "home" portion of the RV was manufactured by Jayco.  When Ford completed its part of the RV, it sent it to Jayco, which completed the assembly.  Jayco sold the RV to Lloyd Bridges, an independent dealer, which in turn sold it to Harnden.  Following his purchase of the RV, Harnden returned it several times to Ford and Jayco for repair of various defects.

On April 14, 2004, Harnden filed a complaint in Michigan state court against Ford, Jayco, and Lloyd Bridges, alleging (1) breach of contract; (2) violation of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901 *et seq.*; (3) breach of written warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*; (4) revocation of acceptance; (5) breach of implied warranty under the MMWA; (6) breach of express warranty; (7) breach of implied warranty of merchantability; and (8) violation of the Motor Vehicle Service and Repair Act ("MVRSA"), Mich. Comp. Laws § 257.1301 *et seq*.  On May 28, 2004, the defendants removed the case to federal court based on Harnden's federal claim under the MMWA. Harnden did not move to remand the case to state court.

On March 30, 2005, the district court granted Lloyd Bridges's motion for summary judgment. *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 309 (E.D. Mich. 2005).  Lloyd Bridges was subsequently dismissed from the suit and thus is no longer a party.  On July 8, 2005, Jayco moved for summary judgment on all claims against it, relying in part on an expert report prepared by Randy Zonker, a Jayco employee.  On October 19, 2005, Harnden informed the court that he was dismissing his revocation-of-acceptance and breach-of-contract claims.  On October 25, 2005, the district court granted Jayco's motion for summary judgment on all remaining claims. *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315 (E.D. Mich. 2005).  On April 10, 2006, summary judgment was entered in favor of Ford, and Ford was subsequently dismissed from the suit. *Harnden v. Ford Motor Co.*, No. 04-72036, 2006 WL 931946 (E.D. Mich. Apr. 10, 2006).  Harnden now appeals the district court's order granting Jayco summary judgment on Harnden's breach-of-express-warranty claim and his claims under the MMWA and MCPA.

## II.  Jurisdiction

We *sua sponte* raised the issue of jurisdiction with the parties and requested additional briefing, despite the fact that the district court stated it had jurisdiction based on Harnden's MMWA claim. *See Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 508 (6th Cir. 2006) (explaining that a Court of Appeals has "an independent duty 'to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction.'" (quoting *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977))).

Twenty-eight U.S.C. § 1441(b) provides, in pertinent part, that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the

citizenship or residence of the parties." The removing party bears the burden of demonstrating federal jurisdiction, and all doubts should be resolved against removal. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006). "The existence of subject matter jurisdiction is determined by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004).

The MMWA provides for federal jurisdiction over certain claims. 15 U.S.C. § 2310(d)(1)(B). This jurisdiction, however, is subject to an amount-in-controversy requirement. The relevant part of the MMWA provides, "No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection . . . (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). In response to our request for supplemental briefing, Harnden argues that the requisite amount in controversy cannot be met and therefore we should find that jurisdiction is lacking, or alternatively, we should remand the case to the district court so that the total sum in controversy can be decided. Jayco, on the other hand, argues that the amount in controversy exceeds $50,000, and therefore, jurisdiction is proper. We agree with Jayco, and hold that we have jurisdiction to entertain this claim.

In support of his argument that he does not satisfy the $50,000 amount-in-controversy requirement, Harnden relies on our decision in *Golden v. Gorno Bros., Inc.*, 410 F.3d 879 (6th Cir. 2005). In *Golden*, we confronted the question of whether, based on a plaintiff's claim for revocation of acceptance, a court must use the entire amount of the contract—including finance charges—to determine whether the $50,000 amount-in-controversy requirement is satisfied. We rejected the plaintiff's argument that finance charges should be considered and held that where a plaintiff claims revocation of acceptance, the amount in controversy is determined by the following formula: "the price of a replacement vehicle, minus both the present value of the allegedly defective car and the value that the plaintiff received from the use of the allegedly defective car." *Id.* at 883 (quoting *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 405-06 (7th Cir. 2004)) (additional citations omitted). *Golden* used the pre-tax purchase price as the "price of the replacement vehicle." *Id.*

*Golden* decided only whether a plaintiff's revocation-of-acceptance claim met the amount-in-controversy requirement. Moreover, the court rejected *Golden's* argument that his revocation-of-acceptance claim should be analyzed in the same way as a rescission claim, so that the full value of the contract, without offset, should be the amount in controversy. 410 F.3d at 884. First, the court noted that the case that Golden cited in support of this argument, *Rosen v. Chrysler Corp.*, 205 F.3d 918 (6th Cir. 2000), "relies in part on *Jadair, Inc. v. Walt Keeler Co.*, 679 F.2d 131, 133 n.5 (7th Cir. 1982) for the proposition that the contract's entire value, without offset, is the amount in controversy in a diversity case when a plaintiff seeks rescission." *Golden*, 410 F.3d at 884 (citing *Rosen*, 205 F.3d at 921). *Golden* then explained that based on the damages formulas employed by the Seventh Circuit in determining jurisdiction in MMWA cases, and given the fact that the Seventh Circuit had not overruled *Jadair*, "it is clear that the Seventh Circuit does not determine the amount in controversy in rescission cases in the same manner as it does in cases involving revocation of acceptance." 410 F.3d at 884. To be sure, *Golden* did not instruct courts precisely *how* to analyze rescission claims when determining whether the MMWA's amount-in controversy requirement is met, nor did it *expressly* hold that rescission claims in this context should be analyzed differently, as *Rosen* and *Jadair* were diversity cases that did not concern the MMWA and thus were not entirely on point. However, it is clear that *Golden* was distinguishing rescission claims from revocation-of-acceptance claims, and did not endorse the argument that the two types of claims should be analyzed in the same manner.

With this in mind, we find that if only Harnden's revocation-of-acceptance claim were at issue, the formula laid out in *Golden* would clearly control. However, Harnden asserts other relevant claims that were not addressed by the *Golden* court. In particular, Harnden's complaint

alleges breach of contract and requests cancellation of his contract; thus, the remedy he seeks is more akin the rescission claim described by *Golden*. *See Golden*, 410 F.3d at 884. We may consider this state-law claim in computing whether the amount-in-controversy requirement is met. *See* 15 U.S.C. § 2310(d)(3)(B) (expressly providing that federal jurisdiction is not proper "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) **computed on the basis of all claims to be determined in this suit**") (emphasis added). As noted above, *Golden* does not apply the formula to rescission claims. What is truly in dispute is $51,451.22 — the amount of Harnden's contract, without offset.[1] Therefore, we hold that the MMWA's amount-in-controversy requirement is met. It was proper for the district court to exercise jurisdiction.

### III. Admissibility of Randy Zonker's Report

A report detailing a series of tests performed by Jayco employee Randy Zonker was submitted along with Jayco's Motion for Summary Judgment on July 8, 2005. *See* Joint App'x at 20-27. Based on these tests, Zonker ultimately concluded that in his expert opinion the RV was in good condition. He noted just two minor leaks, neither of which was a substantial defect. Zonker reported that neither defect substantially impaired the value of the RV and that both were common in the RV industry. Further, one leak did not affect a Jayco-manufactured part and thus was not covered by the warranty. Zonker concluded that repairing a leaky compartment manufactured by Jayco would be easy, in that "[m]ost likely, the compartment just needs some more sealant at the lip, where the door closes." *See id.* at 25. Zonker recommended that in order to be sure the problem was fixed, he would remove some of the molding in the exterior of the compartment and then clean and seal the entire compartment. *Id.* He claimed that this repair, plus re-testing, would cost no more than $250. Harnden has offered no evidence rebutting Zonker's conclusions that these were the only defects, that these defects were insubstantial, and that these defects were easily repairable for little cost.

Jayco and Harnden dispute the admissibility of this report. At the summary judgment hearing conducted on October 19, 2005, Harnden's attorney objected to the admission of the expert report because it was not in the form of an affidavit or sworn statement, as required under Fed. R. Civ. P. 56(e). Thus, according to Harnden, Zonker's report was inadmissible hearsay. Jayco's attorney responded that he was willing to submit the report in an admissible form, but the district court did not take him up on his offer. The district court considered Zonker's report in conducting its analysis. *See Harnden*, 408 F. Supp. 2d at 319-21.

Even if Zonker's unsworn testimony was in the form of inadmissible evidence for purposes of Rule 56, thus rendering its consideration to be in error, such error may be considered harmless if it "does not affect the substantial rights of the parties." *See* Fed. R. Civ. P. 61; *United States v. Markwood*, 48 F.3d 969, 981 (6th Cir. 1995) (holding that reversal is required only where the district court's error affected a party's substantial rights and the party was prejudiced by the district court's error).

We hold that admission of this report was harmless error. Notably, sending this case back to the district court will simply result in the affidavit being re-submitted in admissible form, and the district court granting summary judgment again. We reject Harnden's contention that if Jayco were given the opportunity to re-file its motion with the report in admissible form, Harnden would have the opportunity to "present additional evidence showing that summary judgment is improper that is not currently part of the record." Appellant's Reply Br. at 11. First, this argument implies that

---

[1]*Golden* holds that finance charges should *never* be included in computing the amount in controversy under the MMWA because such charges are "interest" under § 2310. 410 F.3d at 883. Therefore, we will only consider the purchase price of Harnden's RV—$51,451.22—and not the finance charges.

Zonker's report was a surprise for which Harnden did not have adequate time to prepare; but, in fact, Jayco submitted this report along with its motion for summary judgment on July 8, 2005. Harnden knew of the content of Zonker's report well in advance, and had ample time to procure his own expert report and/or evidence.[2] Thus, Harnden appears to be arguing that had Jayco submitted this same report at the same time, but in admissible form, Harnden would have obtained an expert of his own. Given that Harnden had advance warning of Zonker's testimony, we cannot find that the district court's error affected Harnden's substantial rights, and most certainly, Harnden was not prejudiced by this error.

## IV. Breach of Express Warranty, Michigan Consumer Protection Act and Magnuson-Moss Warranty Act

As explained above, the district court had jurisdiction to hear this case and properly considered Randy Zonker's report. Having had the benefit of oral argument, and having considered the record on appeal and the parties' briefs, we have conducted a *de novo* review and conclude that the district court's order granting summary judgment to Jayco was correct. The district court thoroughly and accurately set forth the undisputed facts and the governing law. Issuing an opinion conducting a complete analysis of these claims would serve no jurisprudential purpose and would be duplicative. Therefore, we affirm the grant of summary judgment on the basis of the district court's well-reasoned opinion of October 25, 2005. *See Harnden*, 408 F. Supp. 2d 315.

## V. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[2]Harnden's response to Jayco's motion for summary judgment, dated September 26, 2005, does not contain any expert evidence.