*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0019p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

WALTER and JULIE SCHULTZ,

    *Plaintiffs-Appellants,*

  *v.*

              No. 06-2322

GENERAL R.V. CENTER; DAMON CORP.,

    *Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-72562—Nancy G. Edmunds, District Judge.

Argued: November 29, 2007

Decided and Filed: January 11, 2008

Before: SILER, GIBBONS, and McKEAGUE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Adam S. Alexander, THE ALEXANDER LAW FIRM, Royal Oak, Michigan, for Appellants. Michael D. Dolenga, DOLENGA & DOLENGA, Farmington, Michigan, for Appellees. **ON BRIEF:** Adam S. Alexander, THE ALEXANDER LAW FIRM, Royal Oak, Michigan, for Appellants. Michael D. Dolenga, Jeffrey R. Nowicki, DOLENGA & DOLENGA, Farmington, Michigan, for Appellees.

———————————

## OPINION

———————————

McKEAGUE, Circuit Judge. Walter and Julie Schultz ("Plaintiffs") filed suit against General R.V. Center and Damon Corp. ("Defendants") in federal district court, alleging that their new R.V. is defective in violation of federal and state consumer laws. The district court granted summary judgment for Defendants on all counts, and Plaintiffs appealed. Following the conclusion of briefing, Defendants filed before this court a motion to dismiss for lack of subject matter jurisdiction on the basis that the Magnuson-Moss Warranty Act's amount in controversy requirement has not been satisfied. For the reasons stated below, we find that federal subject matter jurisdiction exists and **DENY** Defendants' motion to dismiss. With regard to the merits, we **AFFIRM** the district court's grant of summary judgment in favor of Defendants.

## I.  BACKGROUND

On or about June 1, 2003, Plaintiffs purchased and took delivery of a new 2003 Damon Escaper R.V. from General R.V. Center for a total cost of $192,000.  Damon Corp. manufactured the living area of the R.V. and provided an express limited warranty covering the portions of the R.V. that it manufactured.  According to Plaintiffs, throughout their ownership of the R.V. they have experienced problems that have necessitated numerous visits to General R.V.'s service center for repairs.  On July 12, 2004, Plaintiffs ceased operation of the R.V. and filed the instant action in the United States District Court for the Eastern District of Michigan alleging: (1) breach of express and implied warranties; (2) revocation of acceptance; (3) Magnuson-Moss Warranty Act violations; (4) misrepresentation and negligence; and (5) violations of the Michigan Consumer Protection Act. Finding that there was no genuine issue of material fact with regard to any of Plaintiffs' claims, the district court granted summary judgment in favor of Defendants.  Plaintiffs timely appealed.  After briefing had concluded, Defendants filed with this court a motion to dismiss for lack of subject matter jurisdiction.  Because it is a threshold matter, we begin by addressing Defendants' jurisdictional argument.

## II.  ANALYSIS

### A.  Subject Matter Jurisdiction

Defendants argue that federal subject matter jurisdiction is lacking in this case because the total amount in controversy is less than the $50,000 required by the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d)(3)(B).  In support of their argument, Defendants rely primarily on our decision in *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 885 (6th Cir. 2005), and the Seventh Circuit's decision in *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406 (7th Cir. 2004).  Neither *Golden* nor *Schimmer* is controlling in this case, and we find that federal subject matter jurisdiction exists because the MMWA's $50,000 amount in controversy requirement has been satisfied.

Subject matter jurisdiction may be raised at any stage in the proceedings, including on appeal.  *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir. 1992).  When a statute conditions federal court jurisdiction on the satisfaction of an amount in controversy requirement, the failure to meet that specified amount divests the federal courts of subject matter jurisdiction.  *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  It is well-settled that "if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith."  *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 157 (6th Cir. 1993). A showing of bad faith is made if the defendant demonstrates "to a legal certainty[] that the original claim was really for less than the amount-in-controversy requirement."  *Id*.

Although we have generally applied the legal certainty test in the context of 28 U.S.C. § 1332's amount in controversy requirement for diversity jurisdiction, we agree with our sister circuits that it applies with full force and effect in the context of MMWA's amount in controversy requirement.  *See Kelly v. Fleetwood Enterps., Inc.*, 377 F.3d 1034, 1037 (9th Cir. 2004) (applying the legal certainty test to a claim under the MMWA); *see also Gardynski-Leschuck v. Ford Motor Co.,* 142 F.3d 955, 958 (7th Cir. 1998) (applying the legal certainty test to a claim under the MMWA).  Under the legal certainty test, federal subject matter jurisdiction exists "if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount."  *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005) (internal quotations omitted).

Applying these principles here, in order to prevail on their motion to dismiss, Defendants must demonstrate to a legal certainty that Plaintiffs would be unable to recover at least $50,000 were they to succeed on their claims against Defendants.  *See Kelly*, 377 F.3d at 1037-38.  In an attempt

to meet this burden, Defendants unpersuasively argue that under our decision in *Golden* and the Seventh Circuit's decision in *Schimmer*, the total amount in controversy is less than the $50,000 required by the MMWA.

The MMWA is a somewhat unique federal statute in that merely alleging a violation of the act is insufficient to confer federal question jurisdiction; a separate $50,000 amount in controversy requirement must also be satisfied. According to the MMWA: "No claim shall be cognizable [in federal court] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). Our decision in *Golden* announced the formula to be used in determining whether there is at least $50,000 in controversy as required by the MMWA. First, *Golden* explained that any finance charges should not be considered in calculating the amount in controversy. *Golden*, 410 F.3d at 885. Second, *Golden* held that the total amount in controversy is the difference between the value of the allegedly defective vehicle and the price of a replacement vehicle, less the value of any use Plaintiffs obtained from the allegedly defective vehicle. *Id*.

In *Golden*, the plaintiff sought to revoke acceptance of his new customized 2001 Ford Mustang on the grounds that various non-conformities substantially impaired the car's value. *Id*. at 880. The purchase price of the Mustang, including finance charges, was $61,708.80. *Id*. at 882. Absent such charges, the price was $42,903.41. *Id*. at 883. Arguing that the amount in controversy did not exceed $50,000, the defendant in *Golden* filed a motion to dismiss on the basis that there was no federal subject matter jurisdiction under the MMWA. *Id*. at 881. This court affirmed the district court's finding that Golden had not satisfied the $50,000 requirement because—without the finance charges—the replacement value of the car was $42,903.41 while the value of the allegedly defective car was $25,000, resulting in a total amount in controversy of $17,903.41. *Id*. at 885. The *Golden* court stressed that the plaintiff could not satisfy the amount in controversy requirement regardless of the value of the allegedly defective car because "the pre-tax purchase price of the Mustang . . . was significantly below the amount required for federal jurisdiction . . . . Golden would not dispute that if he paid cash for the vehicle . . . the amount in controversy would be less than $50,000." *Id*. at 883. Thus, unlike the instant case, in *Golden* there was no dispute that the amount in controversy was less than $50,000 once the finance charges were removed.[1]

Our decision in *Golden* extensively relied on the Seventh Circuit's decision in *Schimmer* for the proposition that the amount in controversy under the MMWA should be calculated by subtracting the value of the allegedly defective vehicle from the cost of a replacement vehicle. *Golden*, 410 F.3d at 882-83. In *Schimmer*, the plaintiff purchased a Jaguar automobile from the defendant for $69,513. *Schimmer*, 384 F.3d at 406. Unlike the transaction in *Golden*, Schimmer paid for the Jaguar in cash; thus, the $69,513 figure was the actual purchase price uninflated by any finance charges. *Id*. at 403. Also, in *Schimmer* the case was originally filed in state court and removed to federal district court by the defendant. *Id*. at 403-04. As a result, the precise issue before the court in *Schimmer* was whether the matter should be remanded to the state court because the defendant could not demonstrate to a "reasonable probability" that federal subject matter jurisdiction existed under the MMWA. *Id*. at 404. The *Schimmer* court stated that the defendant could not show removal was proper merely by arguing that the amount sought in the complaint

---

[1] Although Defendants also discuss our decision in *Harnden v. Jayco, Inc*., 496 F.3d 579, 582 (6th Cir. 2007), it is of little assistance to either party in this case. In *Harnden*, we considered, *sua sponte*, whether the MMWA's $50,000 amount in controversy requirement had been met. *Harnden*, 496 F.3d at 580-81. According to *Harnden*, the formula announced in *Golden* did not apply because Harnden sought cancellation of the contract rather than revocation of acceptance. *Id*. at 582. The *Harnden* court analogized cancellation of the contract to rescission, which *Golden* held was not subject to the difference between the replacement price and the value of the allegedly defective vehicle formula. *Id*. Like *Golden*, and unlike *Harnden*, Plaintiffs here seek revocation of acceptance not cancellation of the contract or rescission.

exceeded $50,000. *Id*. at 405. Rather, *Schimmer* explained that to determine the amount in controversy the court should calculate the difference between the purchase price of the vehicle and the value of the allegedly defective vehicle. *Id*. at 406. Applying that formula in *Schimmer*, the cost of a replacement car was $69,513 and—according to expert testimony—the value of the allegedly defective Jaguar was $54,013, resulting in a total amount in controversy of $15,500, an amount well below the MMWA's $50,000 requirement. *Id*. at 406. Because the amount in controversy had not been satisfied, *Schimmer* ordered that the matter be remanded to the state court. *Id*.

In the instant case, Defendants have failed to establish to a legal certainty that if Plaintiffs were to prevail they could not recover at least $50,000 in damages. According to Defendants, under the *Golden* formula the total amount in controversy in this case is $44,919.06. To reach this amount, Defendants calculated the difference between the R.V.'s purchase price of $180,349.06 and the estimated retail value of $135,430.00 as found in the N.A.D.A. Recreational Vehicle Appraiser's Guide.

As an initial matter, there is no evidence in this case of the value of the allegedly defective R.V. owned by Plaintiffs. The only figure provided to this court is the N.A.D.A. value, which assumes the vehicle is in good condition; the N.A.D.A. value in no way takes into account the devaluing effect of the non-conformities alleged by Plaintiffs. Accepting for purposes of this jurisdictional analysis only that Plaintiffs' R.V. is defective, its value is not the equivalent of the fully-functional R.V. on which the N.A.D.A. figures are based. Therefore, this case is distinguishable from *Golden* and *Schimmer*, neither of which relied on the N.A.D.A. guide to ascertain the value of an allegedly defective vehicle. *See Schimmer*, 384 F.3d at 406 (stating that an automobile expert valued the allegedly defective Jaguar at $54,013); *Golden v. Gorno Bros., Inc.*, 274 F. Supp.2d 913, 917 (E.D. Mich. 2003) (explaining that the defendant's sales manager estimated the value of the plaintiff's Mustang to be $25,000).

Defendants' mere submission of the N.A.D.A. value of a fully-functional R.V.[2] here is insufficient to demonstrate to a legal certainty that Plaintiffs could not recover at least $50,000 were they to prevail. The purchase price of the R.V.—absent finance charges—was $180,349.06, which is well over the $50,000 amount in controversy requirement. Thus, the instant case is unlike *Golden*, where it was clear that once the finance charges were removed from consideration the MMWA's jurisdictional amount could not be satisfied under any circumstances. On the contrary, in this case "there is a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Chesley*, 406 F.3d at 397. Also—contrary to Defendants' statements at oral argument—nothing in *Golden* supports the proposition that the value of the vehicle in question should be calculated without regard to the defects that allegedly plague it. As we reiterated in *Harnden*, under *Golden* the amount in controversy is to be determined by "the price of a replacement vehicle, minus both the present value of the *allegedly defective* car and the value that the plaintiff received from the use of the allegedly defective car." *Harnden*, 496 F.3d at 581 (internal quotations omitted) (emphasis added). The value of an allegedly defective vehicle cannot be ascertained by resorting solely to the N.A.D.A. value, which assumes that the vehicle is in good condition.

Were we to accept Defendants' reliance on the N.A.D.A. value, the key to federal court jurisdiction in this type of case under the MMWA would be how well a particular type of vehicle—irrespective of any defects that may exist in a specific vehicle—holds its value over a period of time; the existence of federal jurisdiction under the MMWA would hinge entirely on the

---

[2]The N.A.D.A. value relied on by Defendants is not even the estimated value of the particular R.V. owned by Plaintiffs. Rather, they rely on the estimated value of lesser models because the N.A.D.A. guide does not contain an estimated value for the R.V. model purchased by Plaintiffs. We are unwilling to find that the N.A.D.A. value of a well-functioning R.V. model that Plaintiffs do not even own establishes to a legal certainty that less than $50,000 is in controversy in this case.

difference between the N.A.D.A.'s estimated retail value of a non-defective vehicle and the vehicle's original purchase price. The following example illustrates the absurdity of such an approach: Purchaser buys a $200,000 vehicle with an excellent reputation for quality from Buyer. Two months and 4000 miles later, the engine catches fire due to a defect and the vehicle is destroyed; Purchaser institutes litigation in federal court under the MMWA. According to the N.A.D.A. guide, the vehicle (in good condition) has an estimated resale value of $190,000. Applying Defendants' logic in this hypothetical, federal subject matter jurisdiction would not exist under the MMWA because the amount in controversy would only be $10,000, even though the value of the actual vehicle owned by Purchaser has been drastically reduced by the defects that form the basis of the litigation. Clearly, Congress could not have intended for such an absurd result when it enacted the MMWA's $50,000 amount in controversy requirement. *See generally United States v. Turkette*, 452 U.S. 576, 580 (1981) (instructing that statutes should be construed so as to avoid absurd results).

Even accepting Defendants' argument that the N.A.D.A. guide should be the sole basis for calculating the value of Plaintiffs' allegedly defective R.V., the N.A.D.A. excerpts provided to this court actually support our conclusion that the Defendants have failed to demonstrate to a legal certainty that Plaintiffs could not obtain at least $50,000 in damages. Defendants have argued that the N.A.D.A. value to be used in calculating the amount in controversy is the retail price of $135,430, which results in less than $50,000 in total damages under the *Golden* formula. However, the N.A.D.A. guide also contains the trade-in value, which is estimated at $102,610. Were we to rely on the N.A.D.A. guide to establish the value of the R.V., it seems to us that the trade-in value would be as reasonable an estimate of what the R.V. is worth to Plaintiffs as the retail value. Inserting the N.A.D.A. trade-in value into the *Golden* formula leads to an amount in controversy in excess of $50,000. This fact further illustrates that Defendants have not established to a legal certainty that—if successful—Plaintiffs could not obtain at least $50,000 in damages.

While *Golden* continues to govern the manner in which the amount in controversy should be calculated under the MMWA, it does not dispose of the requirement that a defendant must prove to a legal certainty that the plaintiff has not satisfied the amount in controversy requirement. In *Golden*, there was no doubt that the amount in controversy requirement was not met; therefore, it was unnecessary for the court to explain how the value of the allegedly defective vehicle should be determined. Such an issue is squarely before the court today, and we hold that simply offering the N.A.D.A. value of a fully-functional R.V. is insufficient to establish to a legal certainty that Plaintiffs could not obtain at least $50,000 in damages were they to prevail on their claims against Defendants. Accordingly, we deny Defendants' motion to dismiss and conclude that federal subject matter jurisdiction exists under the MMWA.

## B. The Merits

Having found the existence of federal subject matter jurisdiction, we now turn to the merits of Plaintiffs' argument that the district court erred in granting summary judgment for Defendants. Based on our thorough review of the parties' briefs, the record, and the applicable law, as well as having had the benefit of oral argument, we find no error in the district court's decision. Because an opinion addressing the merits of Plaintiffs' claims would serve no jurisprudential purpose, we affirm the district court's decision granting summary judgment for Defendants on the grounds stated in that court's opinion.

### III. CONCLUSION

For the foregoing reasons, we **DENY** Defendants' motion to dismiss and **AFFIRM** the judgment of the district court.