RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0272p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

DAN BENNETT; KAREN BENNETT,
  *Plaintiffs-Appellants/Cross-Appellees,*

v.

CMH HOMES, INC.,
  *Defendant-Appellee/Cross-Appellant.*

Nos. 13-5423/5560

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:08-cv-01212—Kevin H. Sharp, District Judge.

Argued: January 28, 2014

Decided and Filed: October 30, 2014

Before: MERRITT, BOGGS, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Kirk L. Clements, HAYNES, FREEMAN & BRACEY, PLC, Goodlettsville, Tennessee, for Appellants/Cross-Appellees. William S. Rutchow, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Nashville, Tennessee for Appellee/Cross-Appellant. **ON BRIEF:** Kirk L. Clements, HAYNES, FREEMAN & BRACEY, PLC, Goodlettsville, Tennessee, for Appellants/Cross-Appellees. William S. Rutchow, Jennifer S. Rusie, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Nashville, Tennessee for Appellee/Cross-Appellant.

  MERRITT, J., delivered the opinion of the court, in which BOGGS, J., joined. STRANCH, J. (pp. 8–14), delivered a separate dissenting opinion.

---

**OPINION**

---

MERRITT, Circuit Judge.  This case asks whether the Magnuson-Moss Warranty Act extends federal protection to warranties guaranteeing the proper installation of plaintiffs' "manufactured home."  The Act limits its protections to "consumer products," so the core issue is whether the plaintiffs' "manufactured home" is a "consumer product."[1]  As a necessary element of the plaintiffs' only federal claim in an action between non-diverse parties, the scope of the Act raises questions of both federal jurisdiction over the dispute and the merits of the plaintiffs' claim.  Without discussing whether plaintiffs' home is a "consumer product," the district court ruled that the defendant had violated the Act and Tennessee law by improperly installing the plaintiffs' home.  The plaintiffs' appealed the size of their damage award, and we questioned at oral argument whether there is federal jurisdiction in this case.  After supplemental briefing by the parties, we hold that we do have jurisdiction but that the plaintiffs' home is not a "consumer product."  As such, plaintiffs' claim under the Magnuson-Moss Warranty Act fails on the merits and we dismiss it.  We remand for the district court to decide whether it wishes to exercise supplemental jurisdiction over the plaintiffs' remaining state-law claims.

**I.**

In 2004, the plaintiffs' home in Rockvale, Tennessee, burned down.  To replace it, they purchased a 2180-square-foot, "triple-wide" manufactured home from the defendant, with upgrades like multiple porches and decorative brick, for a total of $160,230.  As part of the sales agreements, defendant was responsible for "normal delivery and installation" of the new home on the plaintiffs' land.  Further, defendant warranted that, "[f]or new homes, installation at the initial homesite will be completed in accordance with applicable governmental requirements."

---

[1]The Magnuson-Moss Warranty Act provides a federal cause of action for a "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty [or] implied warranty."  15 U.S.C. § 2310(d).  Under the Act, a "consumer" is defined as "a buyer . . . of any consumer product."  15 U.S.C. § 2301(3).  The Act defines a "consumer product" as "any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes," including attachments to real property but excluding real property.  15 U.S.C. § 2301(1).

Defendant delivered the home in three pieces and installed it in March 2005, although much of the installation process remains a mystery.  At trial, only one of the several members of the installation crew was identified.  He was not licensed to install manufactured homes as required by the State of Tennessee.  *See* T.C.A. § 68-126-404(a) ("No person may install a manufactured home in this state unless such person is licensed by the commissioner as an installer.").

Plaintiffs immediately began noticing defects that suggested the home was not level when installed, and they notified the defendant before they closed on the house.  Defendant assured plaintiffs that it would repair and level the home, and plaintiffs closed on the home in reliance on defendant's assurances.  After several years of inspections and repair efforts, defendant never did level or repair the home to the plaintiffs' satisfaction.

Plaintiffs eventually filed suit in the United States District Court for the Middle District of Tennessee in Nashville.  Their complaint broadly alleged, among other claims, breach of contract in one count and federal breach of warranty in another.  Within their breach-of-warranty count, plaintiffs complained that "Defendants['] actions outlined herein constituted a breach of warranty as the Defendants have failed to act pursuant to the warranties and/or in conformity with 15 U.S.C.A. § 2304," the Magnuson-Moss Warranty Act, "and/or other applicable law."

Defendant quickly moved to compel arbitration and dismiss the case.  Judge Echols entered an ordering denying defendant's motion, finding that the arbitration provisions in the applicable sales agreement were unenforceable because they were unconscionable and the sales agreement was a contract of adhesion.  Consistent with the district court's ability to "look through" an arbitration agreement and consider jurisdiction, citing *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009), Judge Echols concluded without further analysis that plaintiffs "allege a claim for breach of warranty under the Magnuson-Moss Warranty Act . . . over which the Court has federal question jurisdiction."

Judge Echols then passed the case to Magistrate Judge Brown for pre-trial processing.  In the initial case-management order entered on March 11, 2009, Magistrate Judge Brown noted Judge Echols' ruling on the arbitration issue but also noted that "[defendant's] counsel raised the possibility at the conference that this Court might lack jurisdiction . . . ."  Magistrate Judge

Brown advised counsel that "if there is a question of jurisdiction, Defendant's counsel should file a motion to dismiss on those grounds as soon as practicable." Defendant's counsel never did, and filed an answer on March 25, 2009, that did not discuss jurisdiction.

After mentioning the issue again in another case-management order entered on March 16, 2009, Magistrate Judge Brown wrote on April 22, 2009, that "in view of Judge Echols' decision on the arbitration matter . . . there is no jurisdiction question at the present time." There was no further mention of jurisdiction in the lower court, and the case moved forward under the assumption that plaintiffs' Magnuson-Moss Warranty Act claim conferred federal jurisdiction.

The case then proceeded to a bench trial before Judge Sharp. Judge Sharp construed the complaint as alleging a breach-of-contract claim under Tennessee law as well as a "breach of warranty and/or violation of Magnuson-Moss Warranty Act" claim. *Bennett v. CMH Homes, Inc.*, No. 3:08-01212, 2012 WL 5416481 at *10 (M.D. Tenn. Nov. 6, 2012) (*quoting Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005)). Judge Sharp found that defendant had breached both the contract and its warranties by failing to properly install and level the house, and also by failing to install the house in accordance with applicable governmental requirements—specifically, by failing to use installers who were licensed as required by Tennessee law. *Id.* at *8-10; *cf.* T.C.A. § 68-126-404(a). Having determined liability, Judge Sharp deferred ruling on the appropriate remedy and damages in hopes that the parties would settle. *Id.* at *11. They did not, and Judge Sharp awarded $39,238.29 in damages to the plaintiffs. *Bennett v. CMH Homes, Inc.*, No. 3:08-01212, 2013 WL 146034 at *3-10, *15 (M.D. Tenn. Jan. 14, 2013). Plaintiffs appealed the amount of their award, and defendant cross-appealed to challenge both liability and the damages award.

At argument, we questioned the parties on whether the manufactured home is a "consumer product" and whether there is federal jurisdiction in this case. We learned that neither party was confident in federal jurisdiction when the parties originally filed. Rather, the parties seemed to have agreed to litigate in federal court. Counsel did not address the jurisdictional issue when Magistrate Judge Brown provided them with an opportunity. Because a "lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties," *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934), we requested further briefing on the issue.

**II.**

Whether plaintiffs' home is a "consumer product" appears at first to be both a jurisdictional question and a merits question. It is both an element of the statutory cause of action allegedly providing subject-matter jurisdiction in this case, as well as a "disputed fact [that] goes to the merits" of that claim. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In a recent Title VII case, the Supreme Court had before it a similar "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy." *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 511 (2006). The Court explained that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-related determination." *Id.* The Court clarified that a plaintiff need not prove the entire cause of action to obtain jurisdiction, but rather must only plead a "colorable claim" that "arises under a federal law." *Id.* at 513 (citing 28 U.S.C. § 1331) (internal edits omitted). To plead such a claim, a plaintiff must prove "jurisdictional" facts but need not prove facts that go to the merits of the plaintiff's federal cause of action. *Id.* at 514. Our court has said that under such circumstances where a question of "subject-matter jurisdiction also implicates an element of the cause of action," as here, "then the district court should 'find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Gentek*, 491 F.3d at 330 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

Because the question of whether plaintiffs' home is a "consumer product" implicates both jurisdiction and the merits of plaintiffs' claim, we find jurisdiction and address the question as a merits issue.[2] *Arbaugh*, 546 U.S. at 513. Although not addressed below, whether the definition of "consumer product" includes plaintiffs' home is a matter of statutory interpretation and a question of law, see *Miller v. Herman*, 600 F.3d 726, 737 (7th Cir. 2010), that we may answer in the first instance, see *City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 255 (6th Cir. 1994).

---

[2]Another provision of the Magnuson-Moss Warranty Act's cause of action is that it contains a $50,000 amount-in-controversy requirement. 15 U.S.C. § 2310(d)(3)(B). Nevertheless, we are permissive with this requirement, and it is the defendant's burden to "prove to a legal certainty that the plaintiff has not satisfied the amount in controversy requirement." *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 760 (6th Cir. 2008). Neither party challenges the amount in controversy in this case, and thus we assume without decision that the amount is sufficient. *Cf. Miller v. Herman*, 600 F.3d 726, 728 n.1 (7th Cir. 2010).

The text of the Magnuson-Moss Warranty Act and its legislative history provide the guidance necessary to resolve this question of interpretation. During Senate hearings considering the Act, Senator Broyhill of North Carolina asked Senator Moss, a sponsor of the Act, "[w]ould a house be within the definition of consumer product?" 102 Cong. Rec. 30171, 31323 (1974). Senator Moss answered that "[a] house would not fall within the definition of consumer product since a house is not 'tangible personal property.'" *Id.* Here the house is not a house-trailer or a mobile home designed to be moved. Once it is constructed on the site, it is permanent. It would be taxed as real property and, at 2180 square feet, has the size and appearance of a regular house. The plaintiffs' home is more like a house than "tangible personal property," and thus is not a "consumer product" as was intended to be regulated by the Magnuson-Moss Warranty Act. *See* 15 U.S.C. § 2301(1).

Additionally, "[i]t is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (internal citation and quotation marks omitted). Dictionary entries for the words "consumer" and "consumer goods" during the general era of the Magnuson-Moss Act's enactment describe products that are expendable or meant to be replaced periodically—not a permanent dwelling.[3] In contrast, Tennessee's definition of "manufactured home" suggests something more substantial and permanent:

> a structure, transportable in one (1) or more sections, which, in the traveling mode, is eight (8) body feet or more in width, or forty (40) body feet or more in length, or, when erected on site, is three hundred twenty (320) or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required

---

[3]*See* II The Oxford English Dictionary 886 (1933) (defining "consumer" as "[h]e who or that which consumes, wastes, squanders, or destroys" and also as "[o]ne who uses up an article produced"); Random House Unabridged Dictionary 437 (2d ed. 1993) (defining "consumer" as "a person or thing that consumes" and defining "consume" as "to destroy or expend by use; use up"); Webster's New International Dictionary of the English Language 573 (2d ed. 1946) (defining "consumer" as "[o]ne who or that which consumes" and defining "consume" as "[t]o destroy the substance of," "[t]o use up (time)," and "[t]o eat or drink up (food)"); Webster's Third New International Dictionary 490 (1986) (defining "consumer" as "one that consumes" and "one that utilizes economic goods" and defining "consume," inter alia, as "to destroy or do away with completely," "to use up," and "to utilize (an economic good) in the satisfaction of wants"). *See also* Random House Unabridged Dictionary 437 (2d ed. 1993) (defining "consumer goods" as "goods that are ready for consumption in satisfaction of human wants, as clothing or food, and are not utilized in any further production" (emphasis added)); Webster's New International Dictionary of the English Language 573 (2d ed. 1946) (defining "consumers' goods" as "[e]conomic goods that directly satisfy human wants or desires, such as food, clothes, etc." (emphasis added)). Another dictionary more broadly defines "consumer goods" as "economic goods that directly satisfy human wants or desires" but lists the term as synonymous with "consumer items." Webster's Third New International Dictionary of the English Language 490 (2d ed. 1946).

utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained in the structure.

T.C.A. § 68-126-202(2).**4** Although a manufactured home within Tennessee's definition might conceivably be considered a "consumer product," the size, construction, and permanence of the plaintiffs' home illustrate that their home is not a "consumer product." As such, their federal cause of action fails on the merits.

**III.**

The district court must now determine whether it wishes to exercise supplemental jurisdiction over the plaintiffs' state law claims. The district court's ability to exercise "supplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (citation omitted); *see also Arbaugh*, 546 U.S. at 514. Rather, "[f]ollowing such a dismissal, the district court in its discretion may properly choose whether to exercise § 1367(a) jurisdiction over the supplemental state-law claims," but "such a decision is 'purely discretionary.'" *Orton*, 668 F.3d at 850. We remand so that the district court may exercise that discretion in the first instance and "resolve any confusion respecting the resolution of plaintiffs' state law claims." *Neague v. Cynkar*, 258 F.3d 504, 509 (6th Cir. 2001).

**IV.**

We **DISMISS** plaintiffs' claim under the Magnuson-Moss Warranty Act, and **REMAND** for further proceedings consistent with this opinion.**5**

---

**4**Federal law defines "manufactured home" identically. 42 U.S.C. § 5402(6).

**5**We do not agree with our dissenting colleague that the meaning of a "consumer" product has changed over time and now includes stationary homes like "manufactured" homes. The Magnuson-Moss Warranty Act has not been amended and its text continues to cover only "consumer" products. The Act does not mention "homes" whether "manufactured," "modular," "mobile," "stick-built" or otherwise. After the Act was passed, the FTC, by regulation, advised that, in its opinion, "consumer" products included "boats," "automobiles," and "mobile homes." No FTC or HUD regulation has ever purported to amend the warranty statute to define "consumer" products to include "manufactured," "modular" or other stationary homes erected in place.

Our dissenting colleague apparently also believes that the National Manufactured Housing and Safety Act, 42 U.S.C. §§ 5401-5426, adopted in 1974, as amended in 1980, 1981 and 1998, somehow amends the Magnuson-Moss Warranty Act and changes its original text and meaning; but the Safety Act does not purport to amend in any way or affect the meaning of the Warranty Act. The later Manufactured Housing Act does not even mention warranties or the Warranty Act. It deals with such things as wiring, plumbing and other building-code-type requirements. The Safety Act does not purport to create a private right of action but rather in § 5410 creates civil and criminal penalties and in § 5411 allows the government to bring actions for injunctive relief. The only private right of action for damages is under the Magnuson-Moss Act and its meaning remains unchanged.

---

**DISSENT**

---

STRANCH, Circuit Judge, dissenting.   This case presents the question of whether manufactured homes are consumer products covered by the Magnuson-Moss Warranty Act (MMWA).  15 U.S.C. §§ 2301–2312.  This is not an easy question in the ever-changing world of home construction, particularly in light of the group of similar but differently named products that includes mobile homes, manufactured homes, and modular homes.   The majority finds jurisdiction to be lacking on the basis that plaintiffs' home has sufficient permanence to be excluded from the MMWA.  While it is true that the MMWA applies only to warranties for "tangible personal property," 15 U.S.C. § 2301(1), the Act makes clear that it includes property that would be designated under many state-law regimes as real-property fixtures.  In light of the uncertainty this creates, I would opt for the virtue of predictability. I would adopt the categorical approach of the governing regulatory agencies, the Federal Trade Commission and Department of Housing and Urban Development, and distinguish MMWA coverage based on the regulatory regime to which the home is subject or to which the manufacturer has chosen to subject it.  I therefore respectfully dissent.

The MMWA was created "(1) to make warranties on consumer products more readily understood and enforceable, (2) [and] to provide the Federal Trade Commission (FTC) with means of better protecting consumers . . . ."  House Report No. 93-1107 on the Magnuson-Moss Warranty--Federal Trade Commission Improvement Act June 13, 1974.  The Act achieves these purposes by providing a remedy for certain warranty breaches related to "consumer products." 15 U.S.C. § 2301(1); *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 323-324 (6th Cir. 2007).  It defines "consumer products" as

> any tangible personal property which is distributed in commerce and which is
> normally used for personal, family, or household purposes (including any such
> property intended to be attached to or installed in any real property without regard
> to whether it is so attached or installed).

15 U.S.C. § 2301(1).**[1]**

Some background is helpful before deciding whether the Bennetts' home falls into the category of "consumer products": Federal and state law establishes three main categories of homes that are relevant in the present case: manufactured homes, modular homes, and stick-built (or site-built) homes. Stick-built homes are built using traditional construction techniques, largely on the final home site. As the majority notes, such homes were not intended to fall within the purview of the MMWA.

Until the late 1970's, manufactured homes were generally called "mobile homes." The term "mobile home" was used in federal legislation in the National Housing Act, 12 U.S.C. §§ 1701, 1715z, the United States Housing Act of 1937, 42 U.S.C. § 1437, and the Housing and Community Development Act of 1974, 42 U.S.C. § 5401. For example, the Housing and Community Development Act of 1974 defined mobile home as

> a structure, transportable in one or more sections, which is eight body feet or more in width and is thirty-two body feet or more in length, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained therein;

42 U.S.C. § 5402(6) (1974).

Many are not built to be actually mobile, however. *See* Molly A. Sellman, *Manufactured Housing: The Invalidity of the 'Mobility' Standard*, 19 Urb. Law. 367, 374 (1987). Their mobility is defined by the fact that they are built at a factory and transported, via a built-in chassis, wheels, and axle, to a person's property where they will be affixed and never moved again. *Id*. In response to a negative stigma against "mobile homes," the industry responded by coining the term "manufactured home" that—though naming the same product—was intended to impart a better impression.

The "manufactured-home" terminology has thoroughly replaced "mobile home" in federal and Tennessee law. In 1980, Congress amended federal housing laws. In doing so, the

---

**[1]***Cf.* Tenn. Code § 67-5-501(9)(A) (defining "real property" to include fixtures). *See also* Tenn. Comp. R. & Regs. 1320-5-1-.27(2) & Tenn. Dept. of Rev. Priv. Ltr. Rul. 05-11 (June 8, 2005) (both noting that there is no sales and use tax on tangible personal property which becomes a fixture; such property is taxed as real property).

three acts identified above were amended by striking out "mobile home" each place it appears and inserting in lieu thereof "manufactured home."  Housing and Community Development Act of 1980, Pub. L. No. 96-399, § 308, 94 Stat 1614 (1980).  The amendment changed the definition of manufactured homes to cover larger homes, as well as any building that meets all the requirements to be considered a manufactured home except the size requirements and that is built to the manufactured home building code established by the Secretary of Housing and Urban Development. *Id*. at § 308(d)(B).  Thus, under federal law, manufactured homes literally became mobile homes under a different name.  Tennessee also simply replaced the term "mobile home" with "manufactured home" in its regulations. *See* Tenn. Code § 68-126-202(2) & (4) (providing that the structure is a "mobile home" if built before June 15, 1976 and a "manufactured home" if built after June 15, 1976).  The Tennessee Court of Appeals has found the difference between a "mobile home" and a "manufactured home" a "difference without a distinction." *Beacon Hills Homeowners Assn., Inc. v. Palmer Props., Inc.*, 911 S.W.2d 736, 738 (Tenn. Ct. App. 1995).

At the same time that mobile homes were becoming manufactured homes, the homebuilding industry also began to develop "modular" approaches to homebuilding.  Like manufactured homes, a modular home is largely manufactured somewhere away from the eventual home site and brought to the local home site for installation.  Under Tennessee law, a "Modular building unit" is "a structural unit, or preassembled component unit, including the necessary electrical, plumbing, heating, ventilating and other service systems, manufactured off-site and transported to the point of use for installation or erection, with or without other specified components, as a finished building."  Tenn. Code § 68-126-303(8).  As may be apparent from this definition, modular building units could include homes that also meet the definition of manufactured homes.

The primary difference between a modular home and a manufactured home is the form of regulation to which the home is subject.  Manufactured homes are federally regulated, pursuant to the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. § 5401 et seq.  Under this Act, the United States Department of Housing and Urban Development (HUD) has developed standards and inspection mechanisms for manufactured housing, called the HUD code. *See* 24 C.F.R. § 3280.1 et seq. and § 3282.1 et seq.  Modular

homes, on the other hand, are subject to state or local building codes, either those that are applicable to stick-built houses or specific building codes designated by state law. *See* Tenn. Code § 68-126-301 et seq. (Tennessee Modular Building Act); Tenn. Comp. R. & Regs. 0780-02-13.02 (naming the applicable building codes for modular homes in Tennessee). If a manufactured home will be erected or installed only on a "site-built permanent foundation," the manufacturer may choose whether to certify the home under the HUD code, in which case it is treated as a manufactured home, or under the relevant state-law building codes, in which case it is treated as a modular home. 24 C.F.R. § 3282.12. The record shows that the Bennetts' home was categorized as a manufactured home, subject to the HUD codes. *See* R. 63-2 at Page ID 426.

Returning to the MMWA, I begin by noting that both the Federal Trade Commission (FTC), which administers the Act, and HUD have concluded that manufactured (or mobile) homes are consumer products for the purposes of the Act. In 1975, the FTC issued the Magnuson-Moss Warranty Act Implementation and Enforcement Policy which specifically defined mobile homes as a consumer product covered by the MMWA. 40 Fed. Reg. 25,721, 25,722 (1975) ("Consumer product as defined in the Act includes the following items, and any other items that are tangible personal property and are normally used for personal, family, or household purposes: boats . . . motor homes, automobiles, ***mobile homes*** . . . ." (emphasis added)). In part, this conclusion appears to have been grounded in the statutory text which "includes products which are normally intended to be, or which are at the time of sale, fixtures to real property" in the definition of consumer products. *Id*.; *see* 15 U.S.C. § 2301(1). The FTC later articulated its general approach to defining consumer products in an interpretive rule: "Where it is unclear whether a particular product is covered under the definition of consumer product, any ambiguity will be resolved in favor of coverage." 16 C.F.R. § 700.1(a). HUD likewise concluded that the Act applies to manufactured homes. In its 1996 "Manufactured Home Consumer Manual Guide" (that is, a guide to manufacturers on how to write consumer manuals), the Department instructed manufacturers that any written warranties included in a consumer manual had to be compliant with the MMWA. 61 Fed. Reg. 10,858, 10,864 (1996).

In contrast to mobile homes, the FTC found no MMWA coverage for modular homes. In 1977, the FTC issued an Advisory Opinion determined that modular homes do not qualify as consumer products for the purposes of the MMWA. 42 Fed. Reg. 37,440, 37,440–41. In the opinion, the FTC reiterated that mobile homes qualify as consumer products under MMWA and differentiated modular homes on the basis that they are regulated by modular-home specific building codes—a list of which were included in the appendix of the opinion—or are built according to state building codes for modular homes. *Id.* The appendix list did not include the HUD code, which governs manufactured homes.

None of the administrative pronouncements described above were promulgated in exercise of the FTC's or HUD's authority to make rules carrying the force of law, so *Chevron* deference does not apply. "[I]interpretations contained in formats such as opinion letters are 'entitled to respect' under [the] decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). The Fifth Circuit, moreover, has stated that "because the FTC is vested with various rulemaking authority under the MMWA, its views concerning the scope of the MMWA would be entitled to great weight." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1063 n. 6 (5th Cir. 1984).

In deciding whether the interpretation is persuasive, this court examines the "'thoroughness evident in [the interpretation's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements.'" *OfficeMax, Inc. v. United States*, 428 F.3d 583, 595 (6th Cir. 2005) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)). In assessing the validity of its reasoning, we look "to the statute's text and design, including whether the regulation is 'consistent with the congressional purpose.'" *Southern Rehabilitation Grp., P.L.L.C v. Sec'y of HHS*, 732 F.3d 670, 685 (6th Cir. 2013) (internal citations and quotation marks omitted). As the Seventh Circuit has recognized, the FTC regulations were reached after thorough consideration, including, for some, a notice-and-comment process that was not required by the Administrative Procedure Act, and the agency "has adhered to its interpretive positions consistently since the 1970s." *Miller v. Herman*, 600 F.3d 726, 734 (7th Cir. 2010).

The agencies' interpretation is also consistent with the text and legislative intent of the MMWA. As the majority notes, Representative Moss stated in a colloquy concerning the MMWA that houses would not fall within the Act's definition of "consumer product." *See* 120 Cong. Rec. 30,171, 31,323. In the same hearing, Representative Moss introduced an investigatory report that the committee staff had compiled, revealing problematic warranty terms in a range of consumer products; that report included mobile homes as one of the categories of products examined. *See* 120 Cong. Rec. 30,171, 31,317. As noted above, those products that were categorized as mobile homes in 1974, when the Act was being debated, are now categorized as manufactured homes under federal law.

Two aspects of the structure of the MMWA definition further support the FTC's and HUD's interpretation. First, the definition explicitly includes those products that would otherwise be considered fixtures, such as furnaces, garbage disposals, and the like. Whether a product is permanently installed in real property, therefore, does not resolve the question of whether that product is a "consumer product" under the MMWA. Second, the Act favors categorical approaches to determining whether a certain product is a "consumer product." A frequent issue with regard to the definition is whether a product is for consumers or for commercial use. The Act follows a categorical approach to this question, including in the definition property "which is normally used for personal, family, or household purposes," regardless of whether the particular property at issue in a given case was actually used for such purposes. 15 U.S.C. § 2301(1). Comparably, rather than determine, for any given mobile home, how permanently it was installed and how large it was, the FTC followed a categorical rule: if the home is subject to federal regulation, it is personal property and subject to the MMWA, and if the home is subject to state building codes (like other, stick-built houses), it is real property and falls outside the scope of the Act. The FTC's choice to use a similar categorical approach to distinguish the products before us is therefore sensible.

For the above reasons, grounded in the structure and legislative history of the MMWA, I would find the FTC's and HUD's interpretations to be persuasive. However, there is another reason, apart from the persuasiveness of the interpretations, which would lead me to include the Bennetts' home within the "consumer products" definition. It appears that "The Georgetown"

model of homes may have been sufficiently permanent that CMH could have classified them as modular homes and sought approval under state building codes, rather than under the federal HUD code.  In light of the longstanding FTC and HUD interpretations regarding the MMWA, when CMH made the decision to classify the home as a manufactured home, it likely did so with an expectation that the MMWA would apply.  To the extent that application of the MMWA would operate to the benefit of CMH, the company has a reliance interest in that application, and to the extent that it would operate to the company's detriment, estoppel principles would counsel against giving the company the benefit of exclusion.

For all of these reasons, I would hold that federal courts have jurisdiction under the MMWA and may consider the merits of this case.  I therefore respectfully dissent.